1    **WO**

2

3

4

5

6

7                    **IN THE UNITED STATES DISTRICT COURT**

8                     **FOR THE DISTRICT OF ARIZONA**

9

10   A.I.I.L., et al.,                              No. CV-19-00481-TUC-JCH

11              Plaintiffs,                          **ORDER**

12   v.

13   Jefferson Beauregard Sessions, III, et al.,

14              Defendants.

15

16           This putative class action stems from the forced separation of undocumented parents

17   from their minor children in Arizona and other places along the United States-Mexico

18   border. (*See generally* Doc. 41, the First Amended Complaint, hereinafter "FAC.") The

19   FAC asserts claims against fifteen individual federal officials[1] (collectively "Individual

20   Defendants") and the United States Government ("United States" or "government"). (*See*

21   *generally id.*)

22           Pending before the Court is the United States' Motion to Dismiss for Lack of

23   Jurisdiction and Improper Venue ("Motion"), filed pursuant to Federal Rules of Civil

24   Procedure 12(b)(1) and 12(b)(3). (Doc. 53.) The Motion seeks to dismiss Counts IX–XI,

25   _____

26   [1] Individual Defendants are former high-ranking executive officers representing the
     Department of Homeland Security ("DHS"), U.S. Customs & Border Protection ("CBP"),
27   Immigration and Customs Enforcement ("ICE"), and U.S. Customs & Immigration
     Services ("USCIS"). Counts I–VII, those claims against the Individual Defendants, and the
28   related Individual Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to
     State a Claim, (Doc. 52), are not addressed in this order.

those claims asserted against the United States under the Federal Tort Claims Act ("FTCA") pursuant to 28 U.S.C. §§ 1346(b)(1) and 2675. (FAC ¶¶ 350–62.) The Motion is fully briefed.[2] (Doc. 55; Doc. 62.) For the following reasons, the Court will grant the Motion in part with respect to two plaintiffs, and their claims, and deny the Motion as to all remaining claims.[3]

## I.    BACKGROUND

The FAC alleges the following facts. Plaintiffs are five families[4]—five parents ("Plaintiff Parents"), and their respective children ("Plaintiff Children") (collectively, "Plaintiffs")—who arrived in the United States between December 2017 and June 2018 seeking asylum. (FAC at ¶¶ 62–124.) Shortly after crossing the border into Arizona, Plaintiffs were detained by CBP officers[5] and placed in CBP facilities. CBP officers provided Plaintiffs with limited food and water. The CBP facilities were overcrowded, cold, and without space to lie down. Within days of their arrival, the children were forcibly separated from their parents by CBP officers; classified as Unaccompanied Minor Children ("UAC"), transferred to Office of Refugee Resettlement ("ORR") custody, and moved to facilities in Arizona, Florida, and New York. (FAC at ¶¶ 67, 72, 88, 97–98, 110, 117.) Each family remained separated for periods ranging between seven weeks and sixteen months. (FAC at ¶¶ 73, 91, 99–100, 106–09, 122.) During that time, the government provided

---

[2] This Motion became ripe for consideration on February 5, 2021. However, this matter was stayed between June 1, 2021 and January 7, 2022, as Plaintiffs pursued global settlement negotiations with the United States Defendant. (*See* Doc. 63; Doc. 66; Doc. 67; Doc. 69; Doc. 73; Doc. 74; Doc. 75.)

[3] The Court finds that the Motion is suitable for resolution without oral argument pursuant to LRCiv 7.2(f).

[4] For a brief synopsis on each family's claim see the Court's Order resolving Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim.

[5] The United States Border Patrol is the federal law enforcement organization under the umbrella of CBP. *See https://www.cbp.gov/about/leadership-organization/executive-assistant-commissioners-offices.* For purposes of consistency, the Court will use CBP as this is the term used in the FAC.

limited information to each parent about their child's whereabouts and well-being and afforded only minimal opportunities for each parent and child to communicate. (*Id.*) As a result of their separations, Plaintiffs suffered, and continue to suffer, substantial trauma. (*Id.*)

In Counts IX–XI, Plaintiffs allege three causes of action against the United States under the FTCA, 28 U.S.C. §§ 1346(b)(1) and 2675, including: (1) Count IX – intentional infliction of emotional distress ("IIED"); (2) Count X – negligence; and (3) Count XI – loss of consortium. (FAC ¶¶ 350–62.)

The Motion argues this Court lacks subject matter jurisdiction because Plaintiffs' claims are either barred or subject to various exceptions under the FTCA, specifically: (1) Plaintiffs' claims are barred by the discretionary function exception (Doc. 53 at 20); (2) Plaintiffs' claims are barred by the due care exception (Doc. 53 at 33); (3) the FTCA does not authorize Plaintiffs' constitutional tort claims (Doc. 53 at 35); (4) Plaintiffs' claims are not authorized under the FTCA because there is no private person analog (Doc. 53 at 28); (5) Plaintiffs' claims are barred by the misrepresentation exception (Doc. 53 at 31); and (6) Plaintiffs' claims are not actionable under Arizona law. (Doc. 53 at 32.) Lastly, the Motion challenges venue in the District of Arizona. (Doc. 53 at 43.)

## II.   SUBJECT MATTER JURISDICTION

### A. LEGAL STANDARD UNDER RULE 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges subject matter jurisdiction. Where, as here, the challenge is a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over their claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In such challenges, the court assumes the factual allegations of the complaint to be true and draws all reasonable inferences in plaintiff's favor. *See Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

## 1.  DISCRETIONARY FUNCTION EXCEPTION

Government actions are protected under the discretion function exception if they are (1) discretionary; *and* (2) based on considerations of public policy. *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988) (emphasis added). Both prongs must be satisfied for the discretionary function exception to apply. *Id.* at 536. When evaluating the first prong of the analysis, "the challenged action [must be] a matter of choice for the acting employees…." *Prescott v. United States*, 973 F.2d 696, 703 (9th Cir. 1992). The "nature of the conduct," not the "status of the actor," governs whether the exception applies. *Berkovitz*, 486 U.S. at 536. Under the second prong, "the United States must prove that each and every one of the alleged acts of negligence (1) involved an element of judgment and (2) the judgment was grounded in social, economic, or political policy." *Prescott*, 973 F.2d at 703.

The "basis for the discretionary function exception was Congress' desire to prevent judicial second-guessing of legislative and administrative decisions grounded in" public policy. *Berkovitz*, 486 U.S. at 536–37 (internal quotation and citation omitted). Governmental conduct, however, cannot be discretionary if it violates a legal mandate. *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000); *see also Nunez Eueda v. United States*, No. 220CV10793VAPGJSX, 2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021) ("Plaintiff has plausibly alleged that the government's Policy violated his constitutional rights. Indeed, courts within this circuit have held that "the government's practice of separating families, and the procedures used to implement this practice, likely violated due process.") (internal quotation and citation omitted).

Here, as a threshold matter, the challenged conduct arises out of forced family separations and includes limiting communication between parent and child during separation, imposing poor conditions during confinement, and failing to track separated families. (Doc. 55 at 19–20.)  The government characterizes Plaintiffs' claims differently and suggests that its family separation policy falls under the ambit of federal immigration law including the "custody and care of minor children entering the United States"

authorized under 6 U.S.C. § 279 and 8 U.S.C. § 1232. (Doc. 53 at 6.)

Furthermore, the government acknowledges it has entered into a consent decree (the "*Flores* Agreement") which "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [Immigration and Naturalization Service]." (Doc. 53 at 7.) Under this framework, the government characterizes this lawsuit as a challenge to immigration law authority and the government's prosecutorial discretion which includes not only the prosecution, but also detention and transfer of undocumented persons. (Doc. 53 at 14) ("Nonetheless, Plaintiffs seek to challenge the effect of the government's decision to detain them — that is, the separation from their children after Plaintiffs were placed in adult detention.") In response, Plaintiffs argue that their claims arise out of the individual conduct of unnamed federal officers involved in the separation and treatment of Plaintiffs. (Doc. 55 at 7.) As such, Plaintiffs argue, they have plausibly alleged violations under the Fourth and Fifth Amendments to the Constitution and the discretionary function exception does not bar FTCA claims on these facts. (*Id.*)

Both parties cite to two decisions from this district which considered motions to dismiss in family separation cases. *See A.P.F. v. United States*, No. CV-20-00065-PHX-SRB, 2020 WL 8173295, at *4 (D. Ariz. July 27, 2020) (denying the government's motion to dismiss finding "the discretionary function exception cannot shield conduct related to the government's likely unconstitutional separation of plaintiffs" because "government officials lack discretion to violate the Constitution."); *see also C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020) (denying the government's motion to dismiss finding that "Plaintiffs have plausibly alleged that the government's separation of their families violated their constitutional rights, which is not shielded by the discretionary function exception.").

The government argues, *inter alia*, that the factual circumstances here are materially different from the separations in *C.M.* and *A.P.F.* Specifically, the government submits that in contrast to *C.M.* and *A.P.F.*, the decision to separate here involved consideration of the parents' criminal history, risk of flight (for which prior immigration history is directly

- 5 -

relevant), suitability for release into the community, and standards for placement. (Doc. 62 at 8 n. 1). In support, the government relies in part on *Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020). While evaluating a class exclusion, the *Ms. L.* Court found that the government "must be able to use criminal history as an objective metric not only to assess the parent's fitness and danger to the child, but also risk of flight, danger to others and suitability for release into the community or placement in a [family residential center] with other families." *Id.* at 993. Plaintiffs argue that parents who were prosecuted for illegal entry or re-entry usually received a sentence of time served that amounted to approximately 48 hours or less, and "[e]ven for those Plaintiffs who were charged (or [the government] claims were charged), the government fails to point to any reason why they were detained in adult facilities *after* their release[.]" (Doc. 55 at 21.)

The government's attempts to distinguish *C.M.* and *A.P.F.* are unpersuasive. Because *some* Plaintiff-Parents had a criminal history which the government could properly consider does not overcome the Fourth and Fifth Amendment violations alleged by *all* Plaintiffs. At this stage of the proceedings, Plaintiffs have plausibly alleged that the government's conduct violated their constitutional rights. (*See* FAC ¶¶ 73, 84, 119, 163, 169, 222 (alleging misconduct arising out of and resulting from their separations); *see also* FAC ¶¶ 59, 187, 203–03, 355–58 (alleging misconduct arising from the conditions of confinement); FAC ¶¶ 59, 232–33, 355–58 (alleging misconduct arising from the infrequency of communication between parent and child, and the government's failure to track separated families).) Because constitutional violations are not subject to discretion, the discretionary function exception does not apply.[6]

---

[6] Because both prongs must be satisfied for the discretionary function exception to apply, the Court need not consider the second prong–whether the alleged acts were the kind the discretionary function exception was designed to shield. *See Berkovitz*, 486 U.S. at 536; *Nanouk v. United States*, 974 F.3d 941, 945 (9th Cir. 2020) ("If the act did not involve an element of judgment or choice, the analysis ends there and the plaintiff's claim may proceed."). However, the second prong would arguably be met based on the United States' contentions. *See Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir.), amended, 807 F.2d 769 (9th Cir. 1986) (recognizing "Congress has placed the responsibility of determining where aliens are detained within the discretion of the

## 2.  DUE CARE EXCEPTION

The government asserts that the due care exception to the FTCA applies because the federal officials had statutory authority to determine: (1) whether and where to detain Plaintiffs after their illegal entry into the country pursuant to 8 U.S.C. §§ 1225, 1226(a), and 1231(g)(1); and (2) whether and where to place Plaintiffs' children in the custody and care of ORR, pursuant to 6 U.S.C. §§ 1232(b)(3), 1232(c)(2)(A), 8 U.S.C. § 279(g). (Doc. 53 at 25, 33–34.)

Following other district courts in this circuit, the Court applies the two-prong test established by *Welch v. United States*, 409 F.3d 646 (4th Cir. 2005), to determine whether the due care exception applies. *See Ferguson v. United States*, No. 15CV1253 JM (DHB), 2016 WL 4793180, at *7 (S.D. Cal. Sept. 14, 2016) (applying *Welch's* two-part test); *Kwai Fun Wong v. Beebe*, No. CIV. 01-718-ST, 2006 WL 977746, at *7–8 (D. Or. Apr. 10, 2006) (same). The due care exception applies if (1) a statute or regulation "specifically proscribes a course of action for an officer to follow," and (2) "the officer exercised due care in following the dictates of that statute or regulation." *Welch*, 409 F.3d at 652 (citing *Crumpton v. Stone*, 59 F.3d 1400, 1403 (D.C. Cir. 1995)). Put simply, the due care exception applies only when an official was "reasonably executing the mandates of" a statute or regulation. *Id.* at 651.

Plaintiffs argue that the due care exception does not apply "as there is no statute that authorized, let alone mandated, [the government's] separation of parents and children." (Doc. 55 at 25.) In response to the specific statutes relied upon by the government, Plaintiffs make two separate points: (1) no specific statute mandates family separation as part of prosecuting unlawful immigration; and indeed, officials administered the same statutes and regulations through 2017 without separating families; (2) the TVPRA,[7] the only statute

Attorney General."); *see also Mermindi v. U.S.*, 689 F.3d 975, 984 (9th Cir. 2001) ("the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy….").

[7] The TVPRA refers to the William Wilberforce Trafficking Victims Protection Reauthorization Act, Pub. L. No. 110-457, 122 Stat. 5044 (2008).

which mandates the transfer of minors to HHS custody, concerns children who arrive *without* their parents, but the children here arrived *with* their parents, were separated by the government, subsequently labeled "Unaccompanied Minor Children," and transferred to HHS custody. (*See* Doc. 55 at 25; *see also* Doc. 53 at 25.)

Other district courts within our circuit have rejected the due care exception in similar cases, finding there are no statutes which explicitly authorize the government to detain parents and children in separate facilities before it has charged either with a crime. *C.M.*, 2020 WL 1698191, at *3; *see A.P.F*, 2020 WL 8173295, at *5–6 ("Actions taken pursuant to executive policy are not shielded by the due care exception."); *see also Nunez Euceda*, 2021 WL 4895748, at *4 ("Defendant fails to cite any statute or regulation that required Plaintiff and his children to be separated upon their arrival to the United States."). Because none of the statutory provisions cited by the government expressly mandate enforcement of a family separation policy, the due care exception does not apply.

### 3.  MISREPRESENTATION EXCEPTION

The misrepresentation exception to the FTCA bars "[a]ny claim arising out of ... misrepresentation [or] deceit[.]" 28 U.S.C. § 2680(h). This exception "covers both claims of negligent misrepresentation and claims of fraudulent misrepresentation." *Pauly v. U.S. Dep't of Agriculture*, 348 F.3d 1143, 1151 (9th Cir. 2003) (citing *United States v. Neustadt*, 366 U.S. 696, 702 (1961)). The Supreme Court has held that where the misrepresentations alleged are "not essential" to an otherwise actionable claim, the exception will not bar that claim. *Block v. Neal*, 460 U.S. 289, 296–98 (1983).

The government contends that claims alleging separation by removal should be barred because they are based on misrepresentations made by government officials. (Doc. 53 at 40–41.) Specifically, Plaintiff-Parents L.L.H.O. and J.J.P.B. both allege that they relied on false representations when agreeing to removal from the United States. (FAC at ¶ 88; FAC at ¶ 120.) L.L.H.O. alleges that government officials told her that consenting to her own removal was the only path to reunification with her daughter. (FAC at ¶ 88.) J.J.P.B. alleges an unidentified ICE officer handed him forms and told him that the forms

1    were necessary for asylum; only after J.J.P.B. signed the forms did the ICE officer reveal

2    they were actually for J.J.P.B.'s removal. (FAC at ¶¶ 120–121.)

3         Citing *Block v. Neal*, Plaintiffs argue that such misrepresentations are not the

4    gravamen of their claims which instead comprise Plaintiffs' initial "violent separations

5    from their family members in the first instance, not any misrepresentations that followed."

6    (Doc. 55 at 36.)   The Court agrees and finds that the misstatements allegedly made by

7    government officials are not essential to the claims asserted by either Plaintiffs L.L.H.O.

8    or J.J.P.B. Accordingly, the misrepresentation exception does not bar Plaintiffs' claims.

9                        **4.  PRIVATE ANALOGUE REQUIREMENT**

10        Since an FTCA claim must raise liability under state law, "[t]he breach of a duty

11   created by federal law is not, by itself, actionable under the FTCA." *Love v. United States*,

12   60 F.3d 642, 644 (9th Cir. 1995). To state a claim under the FTCA, Plaintiffs' allegations

13   must demonstrate that "a private individual under like circumstances would be liable under

14   state law." *United States v. Muniz*, 374 U.S. 150, 153 (1963); 28 U.S.C. § 1346(b). This

15   means that "the FTCA applies only if there is a persuasive analogy with private conduct."

16   *Westbay Steel, Inc. v. United State*s, 970 F.2d 648, 650 (9th Cir. 1992). Furthermore,

17   "[a]lthough the federal government 'could never be exactly like a private actor, a court's

18   job in applying the standard is to find the most reasonable analogy.'" *Dugard v. United*

19   *States*, 835 F.3d 915, 919 (9th Cir. 2016) (quoting *LaBarge v. Mariposa Cty.*, 798 F.2d

20   364, 367 (9th Cir. 1986)). Here, Plaintiffs bring claims for negligence, IIED, and loss of

21   consortium, (*see* FAC ¶¶ 350–62), which the Court examines in turn.

22                                **i.  NEGLIGENCE**

23        To establish a negligence claim under Arizona law, the plaintiff must prove four

24   elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a

25   breach of that duty; (3) causation; and (4) actual damages. *See Ontiveros v. Borak*, 136

26   Ariz. 500, 667 (Ariz.1983). Plaintiffs must show that, under circumstances similar to those

27   alleged in this case, Arizona law would "make a 'private person' liable in tort." *United*

28   *States v. Olson*, 546 U.S. 43, 44 (2005) (quoting 28 § 1346(b)(1)) (emphasis in original);

*see* 28 U.S.C. § 2674 (the United States may be liable in tort "in the same manner and to the same extent as a private individual under like circumstances"). This "private person" standard must be met even where, as the government asserts here, the alleged tortious conduct entails "'uniquely governmental functions.'" *Id.* at 46 (quoting *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955); *see also Rayonier Inc. v. United States*, 352 U.S. 315, 318–19 (1957). Plaintiffs cite to *Estate of Smith v. Shartle*, which reasoned:

> [l]ike a nursing facility employee, a BOP employee is tasked with the care of persons who are dependent upon them to make daily housing and safety determinations. And, like nursing care employees, BOP has a duty to ensure the safety of the persons who reside at the facility.

No. CV-18-00323-TUC-RCC, 2020 WL 1158552, at *1–2 (D. Ariz. Mar. 10, 2020). Plaintiffs suggest that, like *Shartle*, the government had a duty to care for its alien detainees, and the FAC's allegations demonstrate a violation of such duty. (Doc. 55 at 30.) In reply, the government contends that Plaintiffs' "claims arise out of the exercise of federal statutory authority that only the government possesses. Accordingly, the challenged conduct is that for which a private person could never be sued." (Doc. 62 at 14; Doc. 53 at 28–31.)

The government's position misconstrues Ninth Circuit law. Plaintiffs' analogy is sufficient and supported by two Arizona district court decisions. *See C.M.*, 2020 WL 1698191, at *2 ("Plaintiffs have demonstrated a private analogue under like circumstances."); *see also A.P.F*, 2020 WL 8173295, at *3 ("This Court has already recognized the existence of a private analogy for IIED and negligence in nearly identical circumstances."). As such, Plaintiffs plausibly plead negligence.[8]

---

[8] Citing *Muscat by Berman v. Creative Innervisions LLC*, the government also argues that Arizona law bars a negligence claim for harms arising from unlawful conduct. 244 Ariz. 194, 199 (Ct. App. 2017). Specifically, the government contends that Plaintiffs' detention occurred because of their illegal entries into the United States and the consequences of such lawful apprehensions and detentions cannot be grounds for recovery under Arizona law. (Doc. 62 at 23.) In *Muscat*, the appellate court affirmed dismissal of

## ii. INTENTIONAL INFLICTION OF EMOTION DISTRESS

The "Ninth Circuit has held that the tort of [IIED] is not excluded as a matter of law from [the] FTCA by § 2680(h)." *Sheehan v. United States*, 896 F.2d 1168, 1172 (9th Cir. 1990), *as amended*, 917 F.2d 424 (9th Cir. 1990) (internal quotation and citation omitted). Accordingly, district courts may exercise jurisdiction over FTCA IIED claims where plaintiffs plead facts suggesting the agents' actions were motivated by malicious intent. *Gasho v. United States*, 39 F.3d 1420, 1434 (9th Cir. 1994) ("In short, if the arrests were motivated by malice, the Gashos are entitled to assert a separate tort claim based on the emotional distress resulting from the arrests.").

In Arizona, an IIED claim has three elements: (1) conduct by the defendant that is "extreme" and "outrageous"; (2) defendant's intent "to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct"; and (3) "severe emotional distress must indeed occur as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43 (Ariz. 1987). Not all objectionable conduct rises to the level of extreme and outrageous. Only conduct that "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community"

---

plaintiff's negligence claim finding that the alleged harms arose solely from the consequences of plaintiff's criminal conduct. 244 Ariz. 194 at 198. *Muscat* involved a lifetime probationer who was placed in a group home. He sued the group home for negligently failing to supervise him during an outing, during which he inappropriately touched a child. *Id*. at 196. He alleged that, as a result, the county attorney's office filed a petition to revoke Muscat's felony probation and charged him with molestation of a child as a repeat felony offender. *Id.* The appellate court held that "[c]riminal defendants have legally protected interests that may be affected during criminal proceedings, but no properly-convicted criminal has a legally protected interest in being free from the inherent consequences of the resulting sentence." *Id.* at 198.

Here, the unlawful misconduct alleged did not flow from the "inherent consequences" of Plaintiff's detention. This argument presumes that all Plaintiffs were criminally charged, an assumption which Plaintiffs have already challenged as false. (*See* Doc. 55 at 21.) Whether the alleged government misconduct was an "inherent consequence" of detention, such that Plaintiffs' negligence claim must be barred, is an argument which goes to the merits of the claims and the evaluation of the specific facts. Such matter is inappropriate for consideration on a motion to dismiss.

meets that standard. *Id.* (internal citation omitted).

Here, the FAC alleges that the government's enforcement of the family separation policy was motivated by malice (*See* FAC ¶¶ 15, 69, 79, 89, 104, 114–16, 120, 125–30, 168, 171–72, 242–58), and rooted in prejudice against aliens crossing the border from Central America (*See* FAC ¶ 9 ("Defendants destroyed families to inflict severe pain on Central American immigrants, hoping that this would cause them to abandon their asylum cases and deter other Central Americans from seeking asylum or other immigration relief in the United States. They took these actions for the purpose of intentionally inflicting emotional distress on the thousands of parents and children they separated, including Plaintiffs.").) Moreover, a jury could find the government's conduct extreme and outrageous and that such emotional distress resulted from the government's conduct. Accordingly, the FAC plausibly alleges an IIED claim.

### iii.  LOSS OF CONSORTIUM

Under Arizona law, "loss of consortium ... is defined as a loss of capacity to exchange love, affection, society, companionship, comfort, care and moral support." *Pierce v. Casas Adobes Baptist Church*, 162 Ariz. 269, 272 (1989). Parents may bring "a cause of action for loss of their child's consortium when the child suffers a severe, permanent, and disabling injury that substantially interferes with the child's capacity to interact with his parents in a normally gratifying way." *Id.* The Arizona Supreme Court has specified, however, that the need for a severe, permanent, or disabling injury does not limit loss of consortium claims to injuries that nearly destroy the parent child relationship. *Id.* at 273. "Although evidence of a significant interference in the parent-child relationship must exist, the injury need not be the functional equivalent of death or even be categorized as 'catastrophic.'" *Id.* at 272. "The focus of the trial court's inquiry is on the interference with the normal relationship between parent and child." *Miller v. Westcor Ltd. P'ship*, 831 P.2d 386, 394 (Ariz. St. App. 1991). Before a loss-of-consortium claim may be presented to a jury, "[w]hether the threshold of a significant interference with the normal relationship between parent and child has been met is a question of law for the judge to determine."

*Pierce*, 162 Ariz. at 272.

Here, Plaintiffs have plausibly pled their loss of consortium claims. In support of their claims, Plaintiffs allege they have suffered, and continue to suffer, substantial trauma from their separations and treatment. Further, every child is alleged to have suffered changes in their behavior which have substantially interfered with the Plaintiffs' parent-child relationship. (*See* FAC at ¶ 76 ("[M.E.H.I.], the younger boy, struggles with being apart from his mother for even brief periods; he is often sad and cries much more than he previously did; and he can no longer sleep or bathe alone. [J.A.H.I.] shows his trauma by acting out in anger, anger that was uncharacteristic before the separation. Both [children] are now extremely suspicious of strangers."), ¶ 92 ("In addition to her mental health problems, [K.E.O.H.] is now cautious, suspicious around strangers, and quick to anger."), ¶ 101 ("Among other things, for months after their reunion, D.S.V.H. experienced separation anxiety. She struggled being apart from her father at any time day or night and worried that they would be separated again. She remains deeply suspicious of strangers."), ¶¶ 111–12 (indicating B.L.S.P. lost her ability to speak her first language while in ORR custody, and as a result, she is unable to communicate with family members in Guatemala.), ¶ 123 ("[A.E.P.F.] now acts out more than he did before his separation from his father, has a short temper, and cries frequently. He also has difficulty being apart from [his father].").)

In sum, Plaintiffs have demonstrated that private individuals have been held liable for negligence, IIED, and loss of consortium in Arizona under reasonably similar circumstances. Thus, the FAC satisfies the private analogue requirement.

## 5.  CONSTITUTIONAL TORT CLAIMS UNDER THE FTCA

Citing *FDIC v. Meyer*, 510 U.S. 471, 478 (1994), the Government next argues that the FTCA does not provide a cause of action for torts involving alleged constitutional violations by the government. (Doc. 53 at 35.) In response, Plaintiffs assert that the government miscasts their claims, their claims against the government arise under state tort law, not the Constitution, and their multiple claims for relief do not convert Plaintiffs' state

1   law claims into constitutional ones. (Doc. 55 at 36–37.) Plaintiffs further assert that the

2   same governmental conduct here violates both state common law and federal constitutional

3   rights, and that their *Bivens* and FTCA claims are parallel, complementary, and

4   permissible. (Doc. 55 at 37, 39.)

5          The FTCA does not provide a waiver of sovereign immunity for constitutional torts.

6   *See FDIC v. Meyer*, 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ("[T]he

7   United States simply has not rendered itself liable under [the FTCA] for constitutional tort

8   claims."); *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1024–25 (9th Cir.2001)

9   (holding that the FTCA does not waive the government's sovereign immunity for claims

10  alleging violations of 42 U.S.C. § 1986). Because the FTCA action cannot be premised on

11  a violation of § 1986, the Plaintiffs must show that the conduct of the government violates

12  Arizona state law. *See Meyer*, 510 U.S. 471 at 477–78 (explaining that the "law of the

13  place" has been construed to refer to the law of the state where the act or omission

14  occurred). The Court has already found that Plaintiffs plausibly allege state law violations.

15  The Court cannot and will not construe Plaintiffs' claims as constitutional violations by the

16  government.

17  **III.    VENUE**

18       **A. DISMISSAL UNDER RULE 12(b)(3)**

19         Under Rule 12(b)(3) of the Federal Rules of Civil Procedure, a party may move for

20  dismissal of an action that has been brought in an improper venue. If venue is improper,

21  the Court must either dismiss the case or, "if it be in the interest of justice, transfer [the]

22  case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

23  The Defendant seeks dismissal of this case, asserting that venue is improper in the District

24  of Arizona. An action may be brought in any venue in:

25         (1) a judicial district in which any defendant resides, if all defendants are
       residents of the State in which the district is located; (2) a judicial district in
26         which a substantial part of the events or omissions giving rise to the claim
       occurred, or a substantial part of property that is the subject of the action is
27         situated; or (3) if there is no district in which an action may otherwise be
       brought as provided in this section, any judicial district in which any
28

- 14 -

defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Once a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). When considering a motion to dismiss pursuant to Rule 12(b)(3), a court need not accept the pleadings as true and may consider facts outside of the pleadings. *See Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

**B. ANALYSIS**

The FTCA has a special venue provision stating that FTCA claims "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). The government moves under Rule 12(b)(3) and 28 U.S.C. § 1406(a)[9] to dismiss for improper venue. (Doc. 53 at 43.) In so doing, the government argues that venue is improper because Plaintiffs have not established that the development of the alleged family separation policy or plan occurred in this district. (*Id.*) Second, as to two families—Plaintiffs J.J.P.B. and his son A.E.P.F. and J.L.V.A. and his daughter D.S.V.H.—venue is inappropriate as their separations occurred in Texas. (*Id.*) Lastly, because venue is improper for these Plaintiffs, the government argues that venue is improper for all Plaintiffs under 28 U.S.C. § 1402(b).[10] In response, Plaintiffs contend that venue is proper as the "lion's share" of the governmental misconduct occurred in Arizona or was directed at Arizona. (Doc. 55 at 44.) Furthermore, Plaintiffs urge that J.J.P.B. and J.L.V.A.'s claims are properly brought under the pendent venue doctrine,

---

[9] Under this section, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

[10] Under this section, "[a]ny civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b).

which provides that venue is proper if those claims, "share a nucleus of operative fact with claims as to which venue is proper." (Doc. 55 at 41 (internal citation and quotation omitted).) Lastly, Plaintiffs urge that even if venue is improper for J.J.P.B. and J.L.V.A., it does not render the entire action improper for the remaining Plaintiffs and the Court should, in the alternative, sever such claims and transfer them. (Doc. 55 at 42–43.)

To determine whether a substantial part of the events giving rise to the claim occurred in the forum, the court first considers what acts or omissions by the defendants give rise to the plaintiffs' claims. *United Tactical Sys. LLC*, 108 F.Supp.3d 733, 752 (N.D. Cal. 2015) (quotation omitted). After "identif[ying] the alleged wrongful acts, the court must determine whether a substantial part of those acts took place in the forum." *All. for Multilingual Multicultural Educ. v. Garcia*, No. C 11-0215 PJH, 2011 WL 2532478, at *7 (N.D. Cal. June 24, 2011).

While the plaintiffs do not reside in Arizona (*See* Doc. 41 at 6-7), most acts involving their separation and mistreatment while in custody occurred here.[11] Specifically, the FAC alleges separations of parents and children at and near the Arizona border, mistreatment of the Plaintiffs in Arizona facilities, and the continued detention of Plaintiff-Parents in Arizona. (Doc. 41 at 17–29.) Although J.J.P.B. and A.E.P.F.'s claims may have zero ties to Arizona, the same cannot be said for J.L.V.A. and D.S.V.H. Importantly, D.S.V.H. was transferred to ORR custody and was held for at least a month at Southwest Key facilities in Phoenix and Glendale, Arizona. (FAC at ¶¶ 97–98.) D.S.V.H. was transported to Arizona and is alleged to have suffered harm here. The resulting trauma experienced by D.S.V.H. and her father comport with the assertion that Arizona is one of the possible districts wherein "the act or omission complained of occurred." Venue "does not require that a majority of the events have occurred in the district where suit is filed, nor does it require that the events in that district predominate." *United Tactical Sys. LLC*, 108 F.Supp.3d at 752 (internal quotation omitted). With respect to J.L.V.A. and D.S.V.H.,

---

[11] The Court agrees that Plaintiffs' allegations do not show that the development of any family separation policy occurred in Arizona.

venue is proper in this district.

The next question is whether "pendent venue" should apply to J.J.P.B. and A.E.P.F.'s claims. Plaintiffs do not cite Ninth Circuit authority recognizing "pendent venue," but district courts in this circuit have found and applied "pendent venue." Under this doctrine, "[w]hen one or more claims are closely related, in that they arise out of a common nucleus of operative facts, venue proves proper as to all claims so long as venue is established for just one claim." *Rosebud Sioux Tribe v. Trump*, 428 F. Supp. 3d 282, 295 (D. Mont. 2019); *Gargoyle Granite & Marble, Inc. v. Opustone, LLC*, No. 2:21-CV-00127-MMB, 2021 WL 5451497, at *9 (D. Idaho Nov. 22, 2021); *Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1089 (N.D. Cal. 2018); *Legal Additions LLC v. Kowalski*, 2009 WL 1226957, at *11 (N.D.Cal. Apr. 30, 2009); *see also* 14D Wright & Miller, Federal Practice and Procedure § 3808 (4th ed. 2021) ("[C]laims invoking supplemental jurisdiction under Section 1367 qualify for pendent venue. So if a federal claim has an independent basis of venue, courts will exercise pendent venue over appended state-law claims that share a common nucleus of operative fact with the federal claim."). Where a case is built around a "single wrong, common issues of proof, and similar witnesses," pendent venue is more likely to be appropriate." *Am. Civil Liberties Union of N. Cal. v. Burwell*, No. 16-CV-03539-LB, 2017 WL 4551492, at *5 (N.D. Cal. Oct. 11, 2017).

Here, J.J.P.B. and A.E.P.F.'s claims do not share a common nucleus of operative facts with the other claims. While J.J.P.B. and A.E.P.F. allege the forced separation of undocumented parents from their minor children pursuant to high-level federal policy, no events or omissions took place in Arizona; the government's alleged misconduct occurred in Texas. Although Plaintiffs offer judicial economy and avoiding piecemeal litigation as reasons to apply pendant venue, there is limited efficiency to adjudicating all claims here as there will likely be minimal overlap in evidence and witnesses. This is particularly true because none of the line-level officers have yet to be named. Moreover, other circuits have found that relying on the pendent venue doctrine where a specific venue provision is applicable is inappropriate because doing so would contravene Congress's clear intent to

limit the districts in which certain claims may be heard. *See Sierra Club v. Johnson*, 623 F.Supp.2d 31, 38 (D.D.C. 2009); *Boggs v. United States*, 987 F.Supp. 11, 18–19 (D.D.C. 1997) (refusing to use the pendent venue doctrine in the context of an FTCA claim because doing so would "place this court in the position of circumventing otherwise clear congressional intent as to where FTCA claims are to be heard"). Applying pendant venue is inappropriate here.

Neither party, however, indicates where venue would be plainly proper as to *all* Plaintiffs or as to J.J.P.B. and A.E.P.F.'s claims. Plaintiffs argue dismissal is unwarranted because venue is proper in Arizona, but in the alternative, a transfer would serve the interest of justice in ensuring an "expeditious and orderly adjudication of cases and controversies on their merits." (Doc. 55 at 43 (internal quotation omitted).)  Section 1406(a) requires "[t]he district court …shall dismiss, or if it be in the interest of justice, transfer such case to any district or division which it could have been brought." 28 U.S.C. § 1406(a). The Court finds that dismissal of J.J.P.B. and A.E.P.F.'s claims is inappropriate as Plaintiffs might suffer prejudice from dismissal because their claims could arguably be barred by the applicable statute of limitations. However, because parties have failed to indicate which district would be appropriate if the Court were to sever the instant claims and transfer them alone, the Court will defer ruling on the transfer of J.J.P.B. and A.E.P.F.'s claims.

...

**IV.     ORDER**

Accordingly,

**IT IS ORDERED GRANTING** United States' Motion to Dismiss (Doc. 53) with respect to Plaintiffs J.J.P.B. and A.E.P.F.'s claims for improper venue. The Court will **DEFER** ruling on the dismissal or transfer of the claims pending additional briefing on the matter. Plaintiffs J.J.P.B. and A.E.P.F may file a supplemental Motion indicating where venue is most appropriate on or before **April 8, 2022**. The United States may file their response on or before **April 15, 2022.** The parties should ensure that all filings comply with Local Rules of Civil Procedure 7.1 and 7.2.

**IT IS FURTHER ORDERED DENYING** United States' Motion to Dismiss (Doc. 53) as to the remaining claims.

**IT IS FURTHER ORDERED REQUIRING** the United States to answer the First Amended Complaint, with respect to the remaining allegations, no later than fourteen (14) days from the date of this Order.

Dated this 31st day of March, 2022.

Honorable John C. Hinderaker
United States District Judge